UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　-against-<br><br>ARCH INSURANCE COMPANY,<br><br>　　　　　　　　　Defendant,<br><br>　and<br><br>NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,<br><br>　　　　　　　Interested Party Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), by and through its undersigned counsel, as and for its Complaint against Defendant, Arch Insurance Company ("Arch"), alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1.　In this action, Travelers seeks a declaration that Arch wrongfully denied its duty to defend LPCiminelli, Inc. ("LPC") on a primary and non-contributory basis in connection with a lawsuit styled *Jose Vega v. FNUB, Inc., et al.*, Index No. 817190/2018, in the Supreme Court of the State of New York, County of Erie (the "Underlying Action"), as an additional insured under a policy of insurance issued by Arch to Franco Associates ("Franco").

2.　As a consequence of Arch's breach of its duty to defend LPC as an additional insured, LPC has filed a motion against Franco in the Underlying Action seeking recovery of its defense fees and costs from Franco pursuant to summary judgment in LPC's favor on its contractual indemnity claim against Franco.

1

3. In addition, Travelers seeks judgment against Arch for reimbursement of any settlement or judgment of LPC's claim against Franco that Travelers pays on behalf of Franco, the payment of which was the obligation of Arch to its additional insured, LPC, as supplementary payments under the Arch Policy.

## THE PARTIES

4. At all times relevant hereto, Travelers was and is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

5. Upon information and belief, at all times relevant hereto, Arch is a Missouri corporation with a principal place of business in Jersey City, New Jersey.

6. Upon information and belief, at all times relevant hereto, Arch is an insurer authorized to do business in the State of New York.

7. Upon information and belief, at all times relevant hereto, National Fire Insurance Company of Hartford ("CNA") is an Illinois corporation with a principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. §§ 1332 and 2201.

9. In the Underlying Action, LPC seeks reimbursement of $259,293.27 from Franco, the mutual insured of Arch and Travelers, for defense costs incurred in connection with the Underlying Action. Therefore, the amount in controversy exceeds $75,000.

10. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), in that Arch and CNA reside in this judicial district.

11. An actual justiciable controversy exists between the parties as to the coverage afforded under the insurance policy issued by Arch.

12. Travelers has no adequate remedy at law.

## THE RELEVANT POLICIES

13. Arch issued a commercial general liability insurance policy to Franco bearing policy number ZAGLB9205600 for the policy period January 1, 2016 to January 1, 2017 (the "Arch Policy"). A copy of the Arch Policy is attached hereto as **Exhibit 1**.[1]

14. Subject to certain terms, conditions, and exclusions, the Arch Policy generally provides coverage for bodily injury that takes place during the policy period and is caused by an accident.

15. The Arch Policy provides, in part:

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

---

[1] For purposes of this filing, premium information was redacted and page numbers were added to the bottom right corner of the Arch Policy in blue font. No other modifications were made by the undersigned to the Arch Policy.

3

> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**Ex. 1** at 39.

16. The Arch Policy further provides, in part:

   **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

   **1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   […]

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   **These payments will not reduce the limits of insurance.**

**Ex. 1** at 46-7 (emphasis added).

17. The Arch Policy contains endorsement CG 20 10 04 13 entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION" (the "Additional Insured Endorsement") which provides, in part:

   This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

4

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location Of Covered Operations |
|---|---|
| ALL PARTIES WHERE REQUIRED BY WRITTEN CONTRACT. | PER SCHEDULE ON FILE |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

> A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf.
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**Ex. 1** at 72-3.

18. The Arch Policy contains endorsement CG 20 01 04 13 entitled "PRIMARY AND NON-CONTRIBUTORY – OTHER INSURANCE CONDITION which provides, in part:

> **Primary And Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**Ex. 1** at 71.

19. Travelers issued a specialty commercial umbrella liability policy to Franco bearing policy number ZUP-14N87471-16-NF for the policy period January 1, 2016 to January 1, 2017 (the "Travelers Policy"). A copy of the Travelers Policy (with premium information redacted) is attached hereto as **Exhibit 2**.

20. The coverage afforded under the Travelers Policy is excess to the proper exhaustion of the Retained Limit, which is defined as "the total of the applicable limits of all Scheduled Underlying Insurance, and the applicable limits of any Other Insurance[…]." **Ex. 2**, pp. 7-8.

21. The Travelers Policy contains endorsement SU 02-14 entitled "Scheduled Underlying Insurance" which identifies the Arch Policy as Franco's underlying commercial general liability insurance. *See* **Ex. 2**, pp. 39, 53.

22. The Travelers Policy provides, in part:

> If valid and collectible Other Insurance applies to damages that are also covered by this policy, this policy will apply excess of, and will not contribute with, that Other Insurance, whether it is primary, excess, contingent or on any other basis.

**Ex. 2** at 29.

23. CNA issued a commercial general liability policy to LPC bearing policy number 4032645449 for the policy period July 1, 2016 to July 1, 2017 (the "CNA Policy"). A copy of the CNA Policy is attached hereto as **Exhibit 3**.[2]

24. LPC is a Named Insured under the CNA Policy. *See* **Ex. 3** at 1, 98.

25. The CNA Policy contains excess "other insurance" provisions that provide that coverage under the CNA Policy is excess over "[a]ny other primary insurance available to you

---

[2] For purposes of this filing, premium information was redacted and page numbers were added to the bottom right corner of the CNA Policy in blue font. No other modifications were made by the undersigned to the CNA Policy.

covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." **Ex. 3** at 150.

### THE SUBCONTRACT BETWEEN LPC AND FRANCO

26. LPC and Franco, as Vendor/Subcontractor, entered into a Subcontract dated October 13, 2014 (the "Subcontract") in connection with a construction project named "UB School of Medicine – Phase 2 (Inc)" located at 929 Main St., Buffalo, NY 14203. A copy of the Subcontract is attached hereto as **Exhibit 4**.

27. The Subcontract required Franco to "procure and maintain the insurance coverages set forth in the Attachment to the Subcontract and comply with all terms and conditions thereof and furnish proof of such coverages to LPCiminelli by way of insurance certificates unless otherwise directed in the Subcontract." **Ex. 4**, p. 12 (§ 7.1).

28. Attachment F to the Subcontract, entitled "Insurance Requirements," required Franco to procure, *inter alia*, the following coverage:

> **Commercial General Liability:** Insurance coverage for liability due to bodily injury, property damage, personal injury, and advertising injury sustained or alleged to have been sustained by any person or entity applicable to ongoing operations, products and completed operations, and contractual liability, with the following limits:
>
> | | | |
> |---|---|---|
> | (a) | General Aggregate | $4,000,000 |
> | (b) | Products and Completed Operations Aggregate | $4,000,000 |
> | (c) | Personal & Advertising Injury | $2,000,000 |
> | (d) | Each Occurrence | $2,000,000 |
>
> As an alternative, it is acceptable for the subcontractor to provide the following primary CGL coverage limits but only in the event the Excess/Umbrella Liability Policy is in place and will respond on a primary and non-contributory basis. This may be accomplished by means of the attaching of an amendatory endorsement or as part of the excess/umbrella coverage form.
>
> | | | |
> |---|---|---|
> | (a) | General Aggregate | $2,000,000 |
> | (b) | Products and Completed Operations Aggregate | $2,000,000 |

      (c) Personal & Advertising Injury                              $1,000,000
      (d) Each Occurrence                                                      $1,000,000

> **Note:** All coverage shall be on an Occurrence Form and include Blanket Contractual Liability coverage. Claims-made coverage is not acceptable. General Aggregate limits must apply separately to each project. Products and Completed operations coverage must be maintained without interruption for a minimum of one year following Final Completion of Subcontractor's Work or through the warranty and guaranty period identified in the Contract Documents, whichever is longer. Such Insurance shall be primary over and apply on a non-contributory basis to any other collectible insurance providing coverage to LPCiminelli and the Owner. Any such insurance providing coverage to LPCiminelli and/or the Owner shall be excess to, and shall not contribute with this insurance.
>
> […]
>
> **Endorsements.** Endorsements such as additional insured, waiver of subrogation, primary, noncontributory, and per project aggregate must be furnished for all policies of insurance as applicable, reflecting the inclusion of the interests of LPCiminelli, Owner, and any other parties required by the Contract Documents for bodily injury and property damage, personal injury, and advertising injury arising out of or in connection with the Subcontractor's Work. Endorsement CG 20 10 or its equivalent to be used on General Liability policy.

**Ex. 4**, pp. 64-5.

## THE JULY 14, 2016 ACCIDENT

29. Upon information and belief, on or about July 14, 2016, Jose Vega (the "Claimant") was injured while operating a buck hoist.

30. On or about November 28, 2016, LPC generated an Employee Accident Report in connection with Claimant's accident. A copy of the Employee Accident Report is attached hereto as **Exhibit 5**.[3]

31. The Employee Accident Report indicates, in part:

---

[3] For purposes of this filing, personally identifiable information in the Employee Accident Report was redacted. No other modifications were made by the undersigned to the Employee Accident Report.

> Employee was operating buckhoist. Franco was removing debris/mortar on level 8 to dock. Franco employee pushed pallet jack onto buckhoist before Mr. Vega was able to lay down plate over opening between platform & buckhoist. Pallet got stuck in gap. Mr. Vega tried to assist in getting the pallet free from gap. Mr. Vega used a piece of angle iron to use as a level to free pallet jack. Upon using the angle, Mr. Vega slipped and strained his abdomen.

**Ex. 5**, p. 1.

32. The Employee Accident Report identifies the following contributing factor:

> Franco employee moved pallet jack prior to plate being set for gap transition[.]

**Ex. 5**, p. 2.

33. The Employee Accident Report includes the following description of the accident by Claimant:

> Franko [*sic*] brought material down from 8th floor to loading dock as they came of to buck hoist I turned to make room when I turned he rolled on buck hoist without putting plate down

**Ex. 5**, p. 3.

## THE UNDERLYING ACTION

34. Claimant commenced the Underlying Action against FNUB, Inc. and LPC on or about October 31, 2018. A copy of the Complaint in the Underlying Action is attached hereto as **Exhibit 6**.

35. In the Underlying Action, Claimant alleges that on July 14, 2016, he was caused to be injured when a safety device failed while Claimant was operating a buck hoist in the course of his employment with LPCiminelli Construction Corp. at the UB Medical Center located at Main Street and High Street in Buffalo, New York. *See* **Ex. 6** at ¶ 8.

9

36. In the Underlying Action, Claimant asserts causes of action against FNUB, Inc. and LPC seeking to recover for injuries based on theories of negligence and violations of New York Labor Law. *See generally* **Ex. 6**.

37. On or about December 26, 2018, FNUB, Inc. and LPC commenced a third-party action against Franco (the "First Third-Party Action") in the Underlying Action. A copy of the First Third-Party Complaint is attached hereto as **Exhibit 7**.

38. In the First Third-Party Action, FNUB, Inc. and LPC assert causes of action against Franco sounding in contractual indemnification, breach of contract, common law indemnification, and contribution. *See generally* **Ex. 7**.

39. The First Third-Party Action alleges that if Claimant sustained injuries as alleged, said injuries were caused "by reason of the primary negligence, carelessness, and lack of due care of Franco […]." **Ex. 7** at ¶ 7.

40. On or about November 5, 2020, Franco commenced a third-party action against USA Hoist Co. Inc. (the "Second Third-Party Action") in the Underlying Action. A copy of the Second Third-Party Complaint is attached hereto as **Exhibit 8**.

41. In the Second Third-Party Action, Franco asserts causes of action against USA Hoist Co. Inc. sounding in common law indemnification and contribution. *See generally* **Ex. 8**.

42. By Order dated October 4, 2021, the Supreme Court, Erie County (Hon. Paula L. Feroleto, J.), denied Franco's cross-motion for summary judgment dismissing the First Third-Party Action. A copy of the October 4, 2021 Order in the Underlying Action is attached hereto as **Exhibit 9**.

43. Following cross-appeals, on June 30, 2023, the Appellate Division, Fourth Department, modified part of the October 4, 2021 Order in the Underlying Action to grant LPC

summary judgment on its contractual indemnification claim against Franco, holding that LPC "established as a matter of law that it was not negligent and that plaintiff's injuries arose out of Franco's work" (internal citations omitted). A copy of the Fourth Department's June 30, 2023 Memorandum and Order is attached hereto as **Exhibit 10**.

44. On or about August 24, 2023, the parties to the Underlying Action agreed to a settlement of Claimant's claims at mediation which included contribution by Arch on behalf of Franco of the Arch Policy's $1,000,000 limit.

45. Arch has taken the position that the Arch Policy limits were exhausted by its $1,000,000 settlement contribution, that Arch has no further defense obligations to Franco and that Arch has no obligation to reimburse LPC for its defense costs.

46. On or about February 16, 2024, LPC, as contractual indemnitee, moved for judgment against Franco in the amount of $259,293.27, plus interest, for attorneys' fees and costs in the Underlying Action. A copy of LPC's Notice of Motion for judgment against Franco is attached hereto as **Exhibit 11**.

## TENDERS TO ARCH

47. By correspondence dated January 25, 2019, CNA tendered the defense and indemnification of LPC to Arch. A copy of CNA's January 25, 2019 correspondence is attached hereto as **Exhibit 12**.[4]

48. Gallagher Bassett Services, Inc. ("Gallagher Bassett"), as third-party claims administrator for Arch, denied CNA's tender by correspondence dated April 22, 2019. A copy of Gallagher Bassett's April 22, 2019 correspondence is attached hereto as **Exhibit 13**.

---

[4] For purposes of this filing, pricing information in the Subcontract included with CNA's tender was redacted. No other modifications were made by the undersigned to CNA's January 25, 2019 correspondence.

11

49. By correspondences dated October 30, 2019 and November 6, 2019, CNA retendered the defense and indemnity of LPC to Gallagher Bassett. Copies of CNA's October 30, 2019 and November 6, 2019 correspondences are attached hereto as **Exhibit 14**.

50. Gallagher Bassett denied CNA's retenders by correspondence dated November 13, 2019. A copy of Gallagher Bassett's November 13, 2019 correspondence is attached hereto as **Exhibit 15**.

51. By correspondence dated August 24, 2021, CNA retendered the defense and indemnity of LPC to Gallagher Bassett. A copy of CNA's August 24, 2021 correspondence is attached hereto as **Exhibit 16**.

52. Gallagher Bassett denied CNA's retender by correspondence dated March 16, 2022. A copy of Gallagher Bassett's March 16, 2022 correspondence is attached hereto as **Exhibit 17**.

53. By correspondence dated August 18, 2023, Travelers demanded that Arch reconsider its improper denial of the tenders made on behalf of LPC. A copy of Travelers' August 18, 2023 correspondence is attached hereto as **Exhibit 18**.

54. Gallagher Bassett denied any further obligations under the Arch Policy by correspondence dated September 13, 2023. A copy of Gallagher Bassett's September 13, 2023 correspondence is attached hereto as **Exhibit 19**.

55. Between September 26, 2023 and October 4, 2023, Travelers and Arch exchanged correspondence regarding LPC's defense costs. Copies of the e-mail correspondences exchanged between Travelers and Arch between September 26, 2023 and October 4, 2023 are attached hereto as **Exhibit 20**.

56. By correspondence dated September 26, 2023, Travelers demanded that Arch cease its ongoing breach of its duty to defend LPC. *See* **Ex. 20**, pp. 4-5.

57. Arch adhered to its prior denial of additional insured coverage to LPC by correspondence dated September 28, 2023. A copy of Arch's September 28, 2023 correspondence is attached hereto as **Exhibit 21**; *see also* **Ex. 20**, p. 4.

58. By correspondence dated September 28, 2023, Travelers demanded that Arch resolve LPC's defense costs. *See* **Ex. 20**, p. 3.

59. Arch adhered to its prior denial of additional insured coverage to LPC by correspondence dated September 28, 2023. *See* **Ex. 20**, pp. 2-3.

60. By correspondence dated October 3, 2023, Travelers again demanded that Arch reconsider its improper denial of the tenders made on behalf of LPC. *See* **Ex. 20**, pp. 1-2.

61. By correspondence dated October 4, 2023, CNA demanded that Gallagher Bassett reconsider its improper denial of its prior tenders on behalf of LPC and reimburse LPC's defense costs. A copy of CNA's October 4, 2023 correspondence is attached hereto as **Exhibit 22**.

62. Arch adhered to its prior denial of additional insured coverage to LPC by correspondence dated October 5, 2023. A copy of Arch's October 5, 2023 correspondence is attached hereto as **Exhibit 23**.

63. Arch has refused to provide additional insured coverage to LPC under the Arch Policy in connection with the Underlying Action.

64. Arch has refused to provide a defense to LPC under the Arch Policy in connection with the Underlying Action.

## CAUSE OF ACTION FOR DECLARATORY RELIEF

65. Travelers repeats, realleges, and incorporates each and every allegation contained in paragraphs "1" through "64" above as if fully set forth herein.

66. LPC qualifies as an additional insured under the Additional Insured Endorsement in the Arch Policy since Claimant's injuries were caused by Franco's acts or omissions in the performance of its operations.

67. As an additional insured, LPC is entitled to a defense in the Underlying Action under the Arch Policy.

68. Under the Arch Policy, the costs of an insured's defense constitute supplementary payments which do not erode the limits of liability coverage.

69. The coverage afforded LPC under the Arch Policy is primary to and non-contributory with any coverage provided by the Travelers Policy.

70. Arch has refused to defend LPC under the Arch Policy with respect to the Underlying Action.

71. Arch wrongfully denied its defense obligation to LCP as an additional insured in an effort to limit Arch's exposure to the liability limits of the Arch Policy.

72. Arch maintained its wrongful denial of its defense obligation to LPC even after the Appellate Division's finding that LPC "established as a matter of law that it was not negligent and that [Claimant's] injuries arose out of Franco's work" (internal citations omitted).

73. Since Arch breached its defense obligations to LPC as an additional insured under the Arch Policy, Arch is responsible for any judgment entered against Franco for LPC's defense costs in the Underlying Action and, to the extent paid by Travelers, obligated to reimburse Travelers for such payment.

74. Accordingly, Travelers seeks a declaration that (i) Arch has a duty to defend LPC as an additional insured under the Arch Policy with respect to the Underlying Action; (ii) Arch is liable for the sums incurred in the defense of LPC in the Underlying Action as supplementary payments under the Arch Policy; (iii) the coverage provided by the Arch Policy to LPC is primary; and (iv) Travelers has no obligation under the Travelers Policy for the payment of LPC's defense costs in the Underlying Action.

75. In addition, Travelers seeks an award at law and in equity against Arch for recovery of all sums Travelers may incur to protect the interest of or satisfy a judgment against our mutual insured, Franco, for defense costs incurred by LPC in the Underlying Action due to Arch's breach of its defense obligations to LPC as an additional insured under the Arch Policy.

## CAUSE OF ACTION FOR EQUITABLE SUBROGATION

76. Travelers repeats, realleges, and incorporates each and every allegation contained in paragraphs "1" through "75" above as if fully set forth herein.

77. Arch had a duty to defend LPC on a primary and non-contributory basis in connection with the Underlying Action from the initial date of tender.

78. Arch breached its defense obligations to LPC when Arch refused to provide additional insured coverage to LPC, assume LPC's defense, and pay LPC's defense costs as supplementary payments under the Arch Policy with respect to the Underlying Action.

79. As a consequence of Arch's breach of its duty to LPC, LPC now seeks monetary judgment against Franco for attorneys' fees and costs incurred by LPC in connection with the Underlying Action.

80. As a consequence of Arch's breach of its duty to LPC, Franco is subject to judgment against it for attorneys' fees and costs incurred by LPC in connection with the Underlying Action.

81. As Franco's excess liability insurer, Travelers is entitled to equitable subrogation from Arch for all sums that Travelers may become obligated to pay as costs incurred to defend LPC in the Underlying Action.

## CAUSE OF ACTION FOR UNJUST ENRICHMENT

82. Travelers repeats, realleges, and incorporates each and every allegation contained in paragraphs "1" through "81" above as if fully set forth herein.

83. Arch had a duty to defend LPC on a primary and non-contributory basis in connection with the Underlying Action from the initial date of tender.

84. Arch was unjustly enriched when Arch refused to pay LPC's defense costs with respect to the Underlying Action, thereby permitting judgment to be sought against Franco for attorneys' fees and costs incurred by LPC in connection with the Underlying Action.

85. Arch should not be permitted to keep the rewards of its wrongful conduct.

86. As Franco's excess liability insurer, Travelers is entitled to full reimbursement from Arch for all sums that Travelers may become obligated to pay as costs incurred to defend LPC in the Underlying Action.

WHEREFORE, Plaintiff Travelers respectfully requests that this Court issue judgment as follows:

1. Declaring that LPC is an additional insured under the Arch Policy to whom Arch owes coverage with respect to the Underlying Action;

2. Declaring that Arch has a duty to defend LPC in the Underlying Action under the Arch Policy, which sums, as supplementary payments under the Arch Policy, are in addition to the limits of liability;

3. Declaring that the obligations of Arch to LPC with respect to the Underlying Action are primary to any obligations of Travelers to LPC;

4. Declaring that the obligations of Travelers to LPC in connection with the Underlying Action are excess and non-contributory to those of Arch;

5. Awarding Travelers judgment against Arch in an amount equal to the sums that Travelers may incur to prevent or satisfy a judgment against Franco for the defense costs incurred by LPC in the Underlying Action as a result of Arch's failure to defend LPC as an additional insured under the Arch Policy;

6. Granting an award in favor of Travelers for the costs of suit incurred herein; and

7. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 5, 2024

USERY & ASSOCIATES

/s/Lisa Szczepanski
By: Lisa Szczepanski
*Attorneys for Travelers Property Casualty Company of America*
T. (917) 778-6680
F. (844) 571-3789
E. lszczepa@travelers.com

Mailing Address:[5]
P.O. Box 2996
Hartford, CT 06104

---

[5] Physical Address: 485 Lexington Ave., 6th Fl., New York, NY 10017