USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiff,

-against-

ARCH INSURANCE COMPANY,

Defendant.

-and-

NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,

Interest Party Defendant.

24-CV-02591 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is an insurance coverage dispute. Non-party LPCiminelli, Inc. ("LPC") was the contractor on a construction project and non-party Franco Associates ("Franco") was one of its subcontractors on the project. The contract between LPC and Franco required Franco to obtain an insurance policy covering LPC as an additional insured. Plaintiff Travelers Property Casualty Company of America ("Travelers") and Defendant Arch Insurance Company ("Arch") were Franco's insurers. Interested Party Defendant National Fire Insurance Company of Hartford ("National Fire") was LPC's insurer. During the construction project, a worker was injured and sued LPC for negligence. LPC then sued Franco for contractual indemnification. During the pendency of those lawsuits, National Fire and Travelers repeatedly asked Arch to defend LPC. Arch's refusal to do so forms the basis of this lawsuit.

Before the Court is a motion for summary judgment from each insurer. Arch seeks dismissal of this lawsuit. Travelers seeks both a declaration that Arch had a duty to defend LPC and an award of damages for amounts Travelers paid defending LPC and Franco. National Fire seeks an award of damages for its unreimbursed defense costs of LPC. For the following reasons, Arch's motion is DENIED, Travelers' motion is GRANTED IN PART and DENIED IN PART, and National Fire's motion is DENIED.

## BACKGROUND

## I. RELEVANT FACTS[1]

### A. The Construction Project and Subcontract

LPC was the contractor for a construction project at the University of Buffalo Medical School (the "Project"). *See* Dkt. No. 53-6. LPC hired Franco to work as a subcontractor on the Project, and the two executed a contract to govern that work (the "Subcontract"). SOF ¶ 18; *see* Dkt. No. 53-6. The Subcontract required Franco to indemnify LPC for bodily injury and property damage "arising out of or resulting from . . . any acts or omissions on the part of" Franco or its employees. Dkt. No. 53-6 at 13. The Subcontract also required Franco to "procure and maintain" insurance coverage as set out in attachments to the Subcontract. *Id.* at 12. Attachment F to the Subcontract required Franco to obtain a commercial general liability insurance policy for bodily injury that would be "primary over and apply on a non-contributory basis to any other collectible insurance providing coverage to [LPC]." *Id.* at 64. Additionally, the Subcontract required that an endorsement on the insurance policy reflect "the inclusion of the interests of [LPC] . . . for bodily injury and property damage." *Id.* at 65. Lastly, the Subcontract

[1] The following facts are taken from the Parties' joint Rule 56.1 Statement (Dkt. No. 50, "SOF") and, where the facts are undisputed or not materially disputed, with evidence from the record.

obligated Franco to provide a certificate of insurance acceptable to LPC that "reflect[ed] the inclusion of the interests of [LPC] . . . as ADDITIONAL INSUREDS." *Id.* at 66.

**B. The Arch Policy**

Consistent with the Subcontract, Franco procured a policy from Arch (the "Arch Policy"). Three portions of the policy are relevant to this lawsuit, addressing *what* the policy covered, *who* the policy covered, and *how* the policy related to other applicable insurance policies.

The policy obligated Arch to pay defense costs of its insured in a lawsuit stemming from "bodily injury." SOF ¶ 3. The payment of those costs would "not reduce the limits of insurance." *Id.* ¶ 5. However, once Arch paid $1 million for "judgments or settlements," the policy would exhaust and Arch would no longer have any duty to defend or to pay defense costs. *Id.* ¶¶ 3, 6.

A schedule in the policy included as additional insureds "all parties where required by written contract." *Id.* ¶ 6. An amendment to that schedule states that entities specified in the schedule are insured "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by" the "acts or omissions" of Franco. *Id.*

Finally, as to how the policy related to other applicable policies, the Arch Policy included an "Other Insurance" endorsement. *See id.* ¶ 8. The endorsement "supersedes any provision to the contrary" and provides that the Arch Policy's insurance is primary and Arch will not seek contribution from insurance available to an additional insured provided that (1) "[t]he additional insured is a Named Insured under such other insurance"; and (2) "You [Franco] have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured." *Id.*

**C. The Travelers Policy and National Fire Policy**

Like Arch, Travelers issued a policy to Franco (the "Travelers Policy"). *Id.* ¶ 14. It provided coverage for bodily injury in excess of "proper exhaustion of the Retained Limit," defined as the greater of "all Scheduled Underlying Insurance." *Id.* ¶ 15.

Finally, National Fire issued an insurance policy to LPC (the "National Fire Policy"). *Id.* ¶ 9. Like the Arch Policy, the National Fire Policy provides coverage for bodily injury. *Id.* ¶ 11.

**D. The Accident**

LPC hired Franco as a construction subcontractor at the Project. *Id.* ¶ 18; *see* Dkt. No. 53-6. During work on July 14, 2016, an LPC worker named Jose Vega slipped and strained his abdomen. SOF ¶¶ 23, 26. LPC generated an Employee Accident Report on November 28, 2016, which Vega signed (the "Accident Report"). *Id.* ¶ 23–24. It provides the following description of the accident:

> [Vega] was operating buckhoist. Franco was removing debris/mortar on level 8 to dock. Franco employee pushed pallet jack onto buckhoist before Mr. Vega was able to lay down plate over opening between platform & buckhoist. Pallet got stuck in gap. Mr. Vega tried to assist in getting the pallet free from gap. Mr. Vega used a piece of angle iron to use as a level [sic] to free pallet jack. Upon using the angle, Mr. Vega slipped and strained his abdomen.

*Id.* ¶ 26. The report identified "Franco employee mov[ing] pallet jack prior to the plate being set for gap transition" as a contributing factor to the accident. *Id.* ¶ 27. Vega also included a description of the accident in the Accident Report:

> Franko [sic] brought material down from 8th floor to loading dock as they came of [sic] to buck hoist I turned to make room when I turned he rolled on buck hoist without putting plate down.

*Id.* ¶ 28.

### E. The *Vega* Action and Third-Party Action

Vega sued LPC and the Project's owner in New York state court on October 31, 2018, alleging negligence and violations of New York Labor Law in connection with the accident and Vega's resulting injuries (the "*Vega* Action"). *Id.* ¶¶ 29–30. On December 26, 2018, the Project's owner and LPC filed a third-party action against Franco for, *inter alia*, contractual indemnification in connection with the *Vega* Action, alleging Vega's accident resulted from Franco's acts or omissions (the "Third-Party Action"). *Id.* ¶¶ 31–32.

One month later, National Fire tendered the defense and indemnification of LPC to Arch, arguing LPC qualified as an additional insured under the Arch Policy. *Id.* ¶ 49; Dkt. No. 1-14. Arch's third-party claims administrator denied the tender on April 22, 2019, on the ground that Franco's act and omissions had not caused Vega's injuries. SOF ¶ 50; Dkt. No. 1-15. National Fire and later Travelers submitted numerous additional tenders as the litigation progressed, all of which Arch's claims administrator denied. *See* SOF ¶¶ 51–67.

In the Third-Party Action, LPC eventually moved for summary judgment and sought a declaration that Franco was contractually required to defend and indemnify LPC because Franco caused Vega's injury. *Id.* ¶ 39. On October 4, 2021, the state court judge denied LPC's motion. *Id.* Two years later, in June 2023, an appellate court reversed the trial court's ruling. Dkt. No. 53-20 at 4. The appellate court determined Franco caused Vega's injury and held Franco was obligated to indemnify LPC under the Subcontract. *Id.*; *see also* SOF ¶ 43.

Following the appeal, the parties in the *Vega* Action decided to pursue settlement discussions. Those discussions culminated in a settlement on August 24, 2023. SOF ¶ 44. Arch paid $1 million to Vega, and Travelers paid a contribution. *Id.* However, the settlement did not resolve the claims in the Third-Party Action, and LPC maintained that Franco was obligated to reimburse LPC for its defense costs in the *Vega* Action. SOF ¶¶ 44–45.

Seeking to resolve the Third-Party Action, Travelers sent Arch numerous letters, demanding that Arch reimburse LPC's defense costs as an additional insured under the Arch Policy. *Id.* ¶¶ 56–67. Arch refused. *Id.* Although Arch had previously argued it had no obligations to LPC because Franco had not caused Vega's injuries, its post-August 2023 letters argued that Arch had no duty to defend any insured given Arch paid $1 million in settlement costs to Vega and therefore the Arch Policy was exhausted. *See, e.g.*, Dkt. No. 53-33.

On February 16, 2024, LPC moved for judgment against Franco for $259,293.27 in defense costs. SOF ¶ 45. Despite Travelers and National Fire's requests, Arch refused to contribute to a potential settlement, again arguing the Arch Policy had been exhausted. *Id.* ¶ 46.

### F. The Settlement Agreement

Six months later, in August of 2024, LPC and Franco executed a settlement agreement resolving the Third-Party Action (the "Settlement Agreement"). *Id.* ¶ 47. Although the requested judgment was $259,293.27, LPC agreed to accept a $245,000 payment to resolve its claims against Franco. *Id.* ¶¶ 45, 47. The Settlement Agreement expressly reserved any rights of Travelers, National Fire, LPC, and Franco to pursue recovery from Arch. *See* Dkt. No. 53-22 at 2 ("Nothing herein shall constitute a waiver or release of Franco's or Travelers' rights to seek recovery of the Settlement Payment from Arch in the [declaratory judgment] Action."); *see id.* ("[LPC] and its insurance carrier, [National Fire], expressly reserve their rights to pursue recovery from Arch . . . for the amount of post-tender attorneys' fees . . . that exceeds the amount of the Settlement Payment.").

## II. PROCEDURAL HISTORY AND THE PRESENT MOTIONS

As noted above, during the pendency of the underlying proceedings, National Fire and Travelers repeatedly asked Arch to pay LPC's defense costs, contending Arch was in violation of its obligations under the Arch Policy. *See, e.g.*, Dkt. Nos. 53-32, -34. Travelers also repeatedly

threatened to file suit if Arch did not make payments. *See, e.g.*, Dkt. No. 53-34. On April 5, 2024, approximately four months before LPC and Franco executed the Settlement Agreement, Travelers made good on its threat and filed this lawsuit, naming Arch as Defendant and National Fire as Interested Party Defendant. Dkt. No. 1. Travelers' complaint sought, *inter alia*, a declaration that "(i) Arch has a duty to defend LPC as an additional insured under the Arch Policy with respect to the Underlying Action; (ii) Arch is liable for the sums incurred in the defense of LPC in the Underlying Action as supplementary payments under the Arch Policy; (iii) the coverage provided by the Arch Policy to LPC is primary; and (iv) Travelers has no obligation under the Travelers Policy for the payment of LPC's defense costs in the Underlying Action." *Id.* ¶ 74.

Following the close of discovery, all three insurers moved for summary judgment. Arch's motion seeks dismissal of this lawsuit. Dkt. No. 47. Arch argues that its $1 million payment to Vega exhausted the Arch Policy and it has no further obligations to any party under the Arch Policy. Dkt. No. 49 at 4. Because this lawsuit seeks recovery for the amounts paid for the Settlement Agreement <u>after</u> the exhaustion of the Arch Policy, Arch argues, the Court should reject Travelers and National Fire's claims and enter summary judgment in its favor. *Id.* at 6–13. Arch further argues that any claims by National Fire are moot because it accepted payment from Travelers in full satisfaction of any claim it could have made against Arch. *Id.* at 14–15.

Travelers' motion seeks a declaration that LPC qualified as an additional insured under the Arch Policy, Arch thus had a duty to defend LPC, Arch's coverage of LPC was primary to National Fire's coverage, and Travelers had no obligation to pay LPC's defense costs. Dkt. No. 51. Travelers also seeks an award of costs it paid for the defense of LPC and Franco. *Id.* Travelers argues that Arch for years wrongfully denied coverage to LPC although LPC qualified

as an additional insured and discovery in the *Vega* Action showed Franco proximately caused Vega's harm. Dkt. No. 55 at 1–3. Travelers further contends that "no provision of the Arch Policy retroactively terminates Arch's obligations to its insureds and Arch's duty to defend LPC in the [*Vega*] Action [that] preceded the purported exhaustion of the Arch Policy." Dkt. No. 61 at 1.

National Fire's motion seeks an award of damages representing the difference between the Settlement Agreement and the anticipated judgment, plus pre-judgment interest that has accrued since 2024. Dkt. Nos. 56–57.

## DISCUSSION

### I. LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed," and a court must draw "all justifiable inferences" in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

Once the movant has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [the nonmovant's] favor." *Anderson*, 477 U.S. at 256. Reliance upon "conclusory statements" or "mere allegations" is not sufficient to defeat summary judgment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532–33 (2d Cir. 1993).

## II. ARCH'S MOTION FOR SUMMARY JUDGMENT IS DENIED

Arch attempts to portray this case as Travelers seeking reimbursement for the amount Travelers paid under the Settlement Agreement. Because Arch had already exhausted its policy at the time the Settlement Agreement was entered, it argues, it no longer had any obligation to defend or indemnify either Franco or LPC, and the Court should dismiss this action. Arch's argument wholly misconstrues the basis of this declaratory judgment action.

The Arch Policy included a $1 million cap on payments for judgments or settlements. Once Arch paid Vega $1 million to settle the Underlying Action, Arch exhausted the cap and it no longer owed a duty to defend any insured of the Arch Policy. Arch's problem, however, is that exhaustion cannot retroactively change an insurer's duties to its insured. *See, e.g.*, *Royal Ins. Co. of Am. v. Lexington Ins. Co.*, No. 02-CV-02085 (RCC), 2004 WL 1620877, at *3 (S.D.N.Y. July 20, 2004) ("Defendant [insurer] was obligated to defend [its insured] *until* its policy limit had been exhausted through the payment of either a judgment or settlement." (emphasis added)). Under the terms of the Arch Policy, defense costs do not reduce the available

amount of the $1 million for judgments or settlements. And the crux of this action is that Arch owes money because it refused to defend LPC in the years <u>before</u> it paid $1 million to settle the Underlying Action. Indeed, the very first paragraph of Travelers' complaint is clear that "[i]n this action, Travelers seeks a declaration that Arch wrongfully denied its duty to defend [LPC] . . . as an additional insured under" its policy. Dkt. No. 1 ¶ 1. Besides declaratory relief, Travelers seeks reimbursement of LPC's defense costs which were "the obligation of Arch to its additional insured, LPC, as supplementary payments under the Arch Policy." *Id.* ¶ 3. Therefore, and despite Arch's agreements to the contrary, this lawsuit is not a contrived mechanism to require Arch to reimburse the other insurers for defense costs incurred post-exhaustion.

Nor do Arch's remaining arguments provide a basis for summary judgment in its favor. Arch argues that LPC and National Fire made a strategic decision to pursue vertical exhaustion of Franco's insurance policies by filing the contractual indemnification action against Franco, as opposed to an action for declaratory judgment against Arch. This argument ignores that, for years, National Fire and Travelers had tendered and re-tendered defense costs to Arch. Furthermore, had Arch agreed to defend LPC at any time in the years prior to the *Vega* settlement, the Third-Party Action would have ceased. *Corrales-Patino v. Procida Constr. Corp.*, No. 19-CV-05579 (ER), 2021 WL 5331528, at *15 (S.D.N.Y. Nov. 15, 2021) (citing New York law and explaining that the "anti-subrogation rule bars a third-party action where both parties were insured under the same policy").

Arch's brief also cites case law referencing "waiver" and "laches." *See* Dkt. No. 49 at 15–16. But nowhere does Arch actually argue that Travelers or National Fire "waived" their right to pursue claims against Arch, or that a laches defense applies. Party presentation

principles prevent the Court from crafting those arguments on Arch's behalf. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)..[3]

Next, Arch argues the Settlement Agreement moots any claims National Fire could make for damages and the accord-and-satisfaction doctrine applies. Not so. Under the Settlement Agreement, LPC accepted from Travelers less than its full defense costs, leaving National Fire to pay the remainder. National Fire has standing to seek that remainder. The accord-and-satisfaction doctrine, meanwhile, requires that a payment or settlement expressly resolve all outstanding issues. *See Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*, 63 N.Y.2d 590, 596–97, 473 N.E.2d 229 (N.Y. 1984) (finding the accord and satisfaction doctrine did not apply where "neither the check nor the letter accompanying it expressly stated that the check was offered in settlement of any outstanding dispute arising out of the contract"). The Settlement Agreement expressly did not solve all issues relevant to this saga. On the contrary, it explicitly provided it did *not* resolve Travelers' or National Fire's claims against Arch in this lawsuit, and that Travelers, National Fire, and LPC retained all rights they may have against Arch. *See* Dkt. No. 53-22 at 2.

Last, Arch argues that Travelers and National Fire are attempting to hold it liable for the defense costs of the Project's owner who also sued Franco in the Third-Party Action. No evidence in the record substantiates this argument, so the Court rejects it.

---

[3] Regardless, the repeated tenders and letters from National Fire and Travelers show that neither insurer waived their claims against Arch, or sat on their rights such that a laches defense could apply. Furthermore, laches requires prejudice from another party's delay in bringing a lawsuit, and Arch has not argued that it suffered prejudice from Travelers bringing this lawsuit in 2024 as opposed to 2018. *First Nationwide Bank v. Calano*, 223 A.D.2d 524, 525, 636 N.Y.S.2d 122 (2d Dept. 1996). Nor could it, as any payment of defense costs Arch might have made prior to the *Vega* Settlement would not have reduced the amount of insurance available for Arch's payment under that settlement agreement.

As Arch has provided no argument or evidence meriting dismissal of this lawsuit, its motion for summary judgment is DENIED.

## III. TRAVELERS' MOTION IS GRANTED IN PART AND DENIED IN PART

Travelers' motion seeks both declaratory and monetary relief. The motion is GRANTED to the extent it seeks a declaration that LPC was an additional insured under the Arch Policy, Arch had a duty to defend LPC, and the Arch Policy was primary to National Fire's policy. All other portions of the motion are DENIED WITHOUT PREJUDICE.

### A. LPC Was an Additional Insured under the Arch Policy

Travelers first seeks a declaration that LPC was an additional insured under the Arch Policy. "Insurance policies are contracts." *Incinia Contracting, Inc. v. Evanston Ins. Co.*, 806 F. Supp. 3d 372, 378 (S.D.N.Y. 2025). As with any other contract, a court gives all terms in an insurance policy their plain meanings while considering the business purposes to be achieved by the parties. *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 237 (2d Cir. 2002). The Arch Policy's plain terms show that LPC was an additional insured.

The Arch Policy included a schedule naming as additional insured "all parties where required by written contract." SOF ¶ 6. It also stated that entities included on the schedule were additional insured only with respect to liability for bodily injury caused in whole or in part by the acts or omissions of Franco. *Id.* The New York Court of Appeals has written that "where an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co. v. NYC Trans. Auth.*, 29 N.Y.3d 313, 317, 79 N.E.3d 477 (2017). Accordingly, LPC qualified as an additional insured under the Arch Policy only if (1) a written contract so required; and (2) LPC faced liability for bodily injury proximately caused "in whole or in part" by Franco. Both requirements are satisfied.

First, the Subcontract was a written contract that required Franco to procure insurance including LPC as an additional insured. Dkt. No. 53-6 at 64–66. For example, Franco needed to furnish endorsements for "all policies of insurance" and those endorsements needed to reflect "the inclusion of the interests of [LPC] . . . for bodily injury and property damage, personal injury, and advertising injury arising out of or in connection with the Subcontractor's Work." *Id.* at 65. Additionally, the Subcontract required Franco to provide a certificate of insurance "reflecting the inclusion of the interests of [LPC] . . . as ADDITIONAL INSUREDS." *Id.* at 66. The Subcontract (a written contract) clearly and plainly required Franco to have an insurance policy under which LPC was an additional insured. Franco did that through the Arch Policy.

Second, Vega's lawsuit against LPC stemmed from his bodily injury at the construction site. And Franco, "in whole or in part," caused Vega's injury. Vega's bill of particulars alleged that he "was an operating engineer of the buck hoist and he sustained his injury when a pallet jack fell into an opening between the floor of the building and the elevated platform of the buck hoist." Dkt. No. 53-10 ¶ 2. The Accident Report, which Vega signed, stated:

> Employee was operating buckhoist. Franco was removing debris/mortar on level 8 to dock. Franco employee pushed pallet jack onto buckhoist before Mr. Vega was able to lay down plate over opening between platform & buckhoist. Pallet got stuck in gap. Mr. Vega tried to assist in getting the pallet free from gap. Mr. Vega used a piece of angle iron to use as a level to free pallet jack. Upon using the angle, Mr. Vega slipped and strained his abdomen.

SOF ¶ 26. It also identified as a contributing factor to the accident "Franco employee moved pallet jack prior to plate being set for gap transition." *Id.* ¶ 27. These documents indicate that Franco, at least in part, caused Vega's injury. Confirming this conclusion, a New York state appellate court expressly held that Franco's negligence was a proximate cause of Vega's harm.

Dkt. No. 53-20 at 4 ("Defendant [LPC] established as a matter of law that it was not negligent and that [Vega's] injuries arose out of Franco's work.").

Arch highlights that Vega did not allege in his complaint Franco proximately harmed him "and therefore Arch does not owe additional insured coverage to LPC." Dkt. No. 60 at 14. This argument proceeds on the premise that the Court is restricted to examining Vega's complaint, only. It is not. The Court may consider materials revealed in discovery as well as the New York appellate court's holding, both of which confirm Franco was a proximate cause of Vega's harm. *Penn-Star Ins. Co. v. Loring Place Realty LLC*, No. 22-CV-01154 (JPO), 2025 WL 240753, at *1 (S.D.N.Y. Jan. 17, 2025) (considering a deposition and determining that, based on the deposition, there was a likelihood that insured was a proximate cause of injury and therefore insurer had a duty to defend).

**B. Arch Had a Duty to Defend LPC**

Next, Travelers seeks a declaration that Arch had a duty to defend LPC. An insurer's duty to defend an insured is "exceedingly broad" under New York law and applies whenever the allegations in a lawsuit "'suggest . . . a reasonable possibility of coverage.'" *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302 (2007) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176 (2006)). "This standard applies equally to additional insureds and named insureds." *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37, 904 N.Y.S.2d 338 (2010). In making this determination, courts may also consider documents revealed during discovery. *Penn-Star Ins. Co.*, 2025 WL 240753, at *1. Arch had a duty to defend LPC if Vega's "bodily injury" was caused "in whole or in part" by Franco. SOF ¶ 6. As discussed above, this requirement is satisfied. Accordingly, Arch had a duty to defend LPC in the *Vega* Action.

**C. Arch's Coverage of LPC was Primary to National Fire's**

Next, Travelers seeks a declaration that Arch's coverage of LPC was primary to National Fire's. The Arch Policy's "other insurance" provision included an endorsement "supersed[ing] any provision to the contrary" and providing that the Arch Policy's insurance was primary provided that (1) "[t]he additional insured is a Named Insured under such other insurance"; and (2) "[y]ou have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured." SOF ¶ 8. LPC was a named insured under the National Fire Policy. *Id.* ¶ 10. And the Subcontract obligated Franco to provide insurance on a primary and non-contributing basis. *See supra* Pt. III(A); Dkt. No. 53-6 at 64. As a result, the coverage to LPC under the Arch Policy was primary to that of the National Fire Policy..[4]

**D. Travelers' Request for Damages**

Finally, Travelers seeks a declaration that it is entitled to damages and seeks an award of damages. The trouble with this request is that Arch clearly owes Travelers and National Fire for defense costs they paid that Arch should have paid had it defended LPC as required, but Arch does not owe monies for the Settlement Agreement or for defense costs incurred *after* it

[4] The same conclusion would follow even without the endorsement. The Second Circuit has held "an indemnity agreement in the underlying trade contract between insureds governs over the terms of an insurance policy concerning priority of coverage." *Century Surety Co. v. Metro. Transit Auth.*, 2021 WL 4538633, at *3 (2d Cir. Oct. 5, 2021). Accordingly, when a subcontractor executes an agreement to indemnify a contractor, the subcontractor's insurance is primary to the contractor's insurance. *Id.*; *see also Arch Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 175 A.D. 3d 437, 438 (First Dept. 2019) ("Since Owners were entitled to contractual indemnification from S&J and a complete pass through of liability, the Nationwide umbrella policy issued to S&J must respond before the Arch primary policy issued to Owners"). Crucially, the Subcontract stated, "[t]o the fullest extent permitted by law, Subcontractor shall defend, indemnify, and hold harmless . . . [LPC] . . . from and against any and all losses, claims, actions, demands, damages, liabilities, or expenses, including but not limited to attorney's fees, . . . [for] liability . . . because of bodily injuries." Dkt. No. 53-6 at 13.

exhausted its policy by paying the *Vega* settlement. This is a finicky (yet crucial) distinction in this case. But it is a distinction that Travelers' briefing at times elides, precluding the Court from issuing further declaratory relief or an award of damages at this juncture.[5] To be clear: Travelers (and National Fire) are entitled to damages. But the measure of Travelers' and National Fire's damages are amounts they paid in defense costs that Arch should have paid *up until* Arch exhausted its policy with the *Vega* settlement. Arch is not on the hook for either post-exhaustion defense costs or the precise amount of the Settlement Agreement.[6] As Travelers' briefing does not seem to wholly grasp this distinction, the Court will DENY WITHOUT PREJUDICE the remainder of Travelers' motion.

## IV. NATIONAL FIRE'S MOTION IS DENIED

Last, National Fire moves for summary judgment that it is entitled to the difference between the amount of the anticipated judgment it sought in the Third-Party Action and the amount Travelers paid in the Settlement Agreement. But it is unclear whether National Fire is seeking unreimbursed defense costs pre-dating the exhaustion of the Arch Policy or settlement costs post-dating the exhaustion. Furthermore, the correct measure of damages is the amount that National Fire paid to defend LPC that Arch should have paid prior to exhaustion, not the

[5] Summary judgment is not appropriate on Travelers' claims for equitable subrogation or unjust enrichment, either. Travelers has not adequately briefed whether its payments were "involuntary," as would be necessary for equitable subrogation to apply. Unjust enrichment, meanwhile, would not provide Travelers an avenue for relief given several contracts—the Subcontract, Arch Policy, National Fire Policy, and Travelers Policy, govern this subject matter. *See Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99-CV-00033, 2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000) (explaining that unjust enrichment is a quasi-contractual claim that "ordinarily can be maintained only in the absence of a valid, enforceable contract."); *Incinia Contracting, Inc.*, 806 F. Supp. 3d at 378 ("Insurance policies are contracts.").

[6] It may well be that the amount Arch owes in defense costs mirrors the amount of the Settlement Agreement payment. But the present record does not prove that.

amount of National Fire's anticipated judgment..[7] National Fire also moves for an award of pre-judgment interest. These amounts clearly correspond to judgment costs and not LPC's pre-exhaustion defense costs. As neither of National Fire's requested awards are appropriate on the present record, National Fire's motion for summary judgment is DENIED.

## CONCLUSION

For the foregoing reasons, Arch's motion for summary judgment is DENIED, Travelers' motion for summary judgment is GRANTED IN PART and DENIED IN PART, and National Fire's motion for summary judgment is DENIED.

It is further ORDERED that the parties meet and confer on the possibility of a settlement and submit a joint letter on or before Friday, September 18, 2026, informing the Court whether the parties have settled and, if not, whether all parties agree to a settlement conference before the assigned Magistrate Judge. If the parties are unable to settle and do not wish to schedule a settlement conference, the Court will issue an order scheduling briefing for supplemental motions addressing damages.

Dated: September 1, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

[7] Again, it may well be that the amount Arch owes to National Fire for defense costs it should have paid will mirror the amount National Fire sought in the anticipated judgment. But that cannot be determined on the present record.